EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* JULIO C. ORDEIN SÁNCHEZ, acusado y apelante.

*Número:* CR-62–108    *Resuelto:* 15 de noviembre de 1962

*Armando A. Miranda,* abogado del apelante; *J. B. Fernández Badillo, Procurador General,* y *Nilita ·Vientós Gastón, Procurador General Auxiliar,* abogados de El Pueblo.

Sala integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Rigau y Dávila.

PER CURIAM: El apelante fue sentenciado a cumplir 10 días de cárcel y se le suspendió la licencia de conductor por el término de dos años, después de habérsele formulado acusación por infracción a la Sección 5–801 de la Ley de Vehículos y Tránsito.

En este recurso sostiene que (1) el tribunal sentenciador cometió error en la apreciación de la prueba, (2) cometió error al negarse a permitirle al acusado presentar una denuncia que por los mismos hechos, el policía denunciante había radicado en el Tribunal de Distrito, y (3) cometió error al dictar sentencia condenatoria sin haberse seguido el procedimiento fijado por la Ley Núm. 141 de 20 de julio de 1960. ■

El primer error no fue cometido. La prueba de cargo consistió en el testimonio del policía Fidel Rodríguez Dávila. En el interrogatorio directo declaró que el día 26 de agosto de 1961, a las 5:30 de la mañana vio al acusado Julio C. Ordein Sánchez conduciendo el vehículo 711–711 en la calle Barbosa en Cataño en contra del tránsito; que dicha calle estaba debidamente rotulada; que lo mandó a detener y le dijo que le mostrara la licencia; tenía la camisa desabotonada y estaba despeinado; que le pidió la llave del vehículo y cuando se bajó no se sostenía en sus pies, que cayó al pavimento de la carretera, lo ayudó a levantarse y lo condujo al Cuartel de la Policía de Cataño; le dijo que si quería hacerse el análisis de la sangre voluntariamente y se negó; que luego lo condujo al Centro de Salud y ante la misma advertencia héchale por el Dr. Fragoso, se negó al análisis de sangre, orina o esputo; de ahí lo llevó ante el Juez San Inocencio

quien lo acusó de guiar en estado de embriaguez. "En el contrainterrogatorio —sigue resumiendo el Procurador General en su Informe— el testigo añadió que la otra persona que andaba con el acusado, Juan Marrero Pacheco, agredió al acusado y que él lo arrestó (T. E. pág. 4). A preguntas del juez declaró que los golpes los recibió el acusado 'durante las gestiones en la investigación de estos hechos' y que estos hechos los había manifestado en la declaración jurada que prestó ante el fiscal. Declaró además, que juró una denuncia contra el acompañante del acusado no sólo por haberlo agredido, sino por los daños que le ocasionó al vehículo propiedad del acusado. A la pregunta del abogado sobre si los hechos ocurrieron en la Avenida Nereida, afirmó que habían ocurrido en la calle Barbosa de Cataño. Así lo repitió a una pregunta del juez (T. E. pág. 6). A preguntas del juez declaró que el acompañante del acusado 'estaba bastante ebrio' y que al caminar el acusado 'iba dando zig-zags de lado a lado' (T. E. págs. 7 y 8). Volvió a repetir a preguntas del abogado, que los hechos no ocurrieron en la Avenida Nereida y que nunca juró ninguna denuncia de que así fuera. Transcribimos otra parte del interrogatorio:

'Señor Juez:

'P. ¿Quién iba manejando el carro en ese momento?

'R. Julio C. Ordein Sánchez.

'P. ¿Había alguna otra persona dentro del carro en ese momento?

'R. Juan Marrero Pacheco.

'P. ¿En qué asiento iba?

'R. En el asiento delantero.

'P. Entonces, ¿qué pasa cuando usted lo manda a detener?

'R. Le dije que me diera la licencia, la cual, cuando estaba buscándola, tenía fuerte olor a alcohol. Al bajarse del vehículo cayó al pavimento. En ese momento viene Marrero Pacheco y le cayó a golpes contra él.

'P. ¿No habían tenido alguna discusión?

'R. No sé; puede que anteriormente la hubieran tenido.

'P. ¿Y usted dice que le dio dos golpes?

'R. Sí, señor.

'P. ¿En esa forma fue que intervino, qué hizo usted para intervenir ahí cuando éste lo agredió?

'R. Cogí a Pacheco y lo agarré por un brazo, entonces lo detuve y este muchacho se paró al lado mío para que éste no fuera a seguir peleando.

'P. Y después de eso, ¿qué pasa?

'R. Lo llevé al Cuartel de la Policía.

'P. ¿Cuándo fueron los golpes del carro, en qué momento?

'R. En el mismo instante.

'P. ¿Cómo fue que Pacheco agolpeó ese carro?

'R. Con los puños y las piernas.

'P. ¿Pero no estaba agarrado por usted en ese momento?

'R. En ese momento yo mandé un individuo para que buscara un guardia para que me ayudara.

'P. ¿Ambos estaban ebrios?

'R. Sí, señor; ellos estaban ebrios.

'P. ¿Entonces los llevó para el Cuartel a los dos?

'R. Sí, señor.' (T.E. págs. 9–11.)" (Págs. 3, 4 y 5, Informe del Procurador General.)

La prueba de defensa consistió en el testimonio del acusado. El Procurador General lo resume así:

"El acusado declaró que en la noche del 26 de agosto de 1961 salió como a las 11:00 de la noche de una granja del señor Luis Álvarez, y que al llegar a su casa encontró uno de sus hijos enfermo.

'. . . Entonces salí a buscarle medicinas. Resulta que no conseguí a Marchand, que es donde yo consigo las medicinas fiadas, y me quedé con unos amigos a ver si conseguíamos que uno de los farmacéuticos que ellos conocían abrieran la farmacia. Como a las dos de la mañana yo decidí volver otra vez. Regresé otra vez y eran como las cuatro y media.

'P. ¿De la mañana?

'R. Regresé a casa y dije, 'vamos a esperar que abran.' Mientras tanto yo estaba haciendo las gestiones con ellos para ver si lo llevábamos al hospital pero noté que se ponía un poquito mejor. Luego de ahí, apareció un señor del pueblo mío, que es chófer público, y me dijo, 'vamos hasta Cataño, y en Cataño puede ser que consigamos a alguien que te pueda arreglar ese

asunto.' Cuando íbamos hacia Cataño, yo llevaba diez dólares en el bolsillo. En la carretera esa que va de Bayamón a Cataño nos paramos a oír un individuo tocando guitarra.

'P. ¿Con un nene enfermo y se paró a oír guitarra?

'R. Entonces, al pararnos un grupo; entonces un individuo allí me dijo que si le daba cinco pesos, entonces yo le dije, 'pero si no lo conozco a usted, ¿cómo le voy a dar cinco dólares? En esos momentos apareció la guagüita de la Policía, entonces el individuo me cayó a puños a mí y ahí el policía me cogió del piso, según él alega, yo seguí caminando de los propios pies míos hasta el Cuartel.

"Lic. Martín Maldonado:

"P. ¿Entonces el que le dio a usted fue este individuo Marrero Pacheco?

"R. En verdad no sé si fue él; cuando salí del carro había un grupo de personas y todos se me aparecieron al frente.

"Contrainterrogatorio por el Hon. Fiscal
Francisco Collazo Lizardi:

"P. ¿Eso fue como a las cinco de la mañana y usted no había tomado nada absolutamente, dice?

"R. No, señor." (T. E. págs. 14–15.)

"Declaró que se había negado a tomarse la muestra de sangre 'porque tenía una hemorragia por la nariz y creo que una persona con una hemorragia así no pueda sacarse la sangre'. Que no le dijeron nada de ninguna otra muestra y que si le hubiere pedido practicar la de orina, hubiera aceptado. T. E. págs. 15–16.)" (Informe del Procurador General págs. 5 y 6.) ■

Convenimos con el Procurador General en que se trata de un conflicto en la prueba que fue resuelto en contra del acusado. Conforme a la constante jurisprudencia de este Tribunal, no intervendremos para dejar sin efecto la sentencia del juez que vio el caso. *Pueblo* v. *Otero*, 67 D.P.R. 765; *Pueblo* v. *Blanco*, 68 D.P.R. 932; *Pueblo* v. *Rivera*, 71 D.P.R. 124; *Pueblo* v. *Garcés*, 78 D.P.R. 102; *Pueblo* v. *Aquino*, 79 D.P.R. 18; *Pueblo* v. *Santana*, 79 D.P.R. 123.

Consideremos el segundo error. El policía declaró que los hechos denunciados ocurrieron en la calle Barbosa de Ca-

taño y negó que en la denuncia que radicó ante el Tribunal de Distrito contra el agresor del acusado hubiera hecho constar que dichos hechos ocurrieron en la Avenida Nereida del mismo pueblo de Cataño. ■

Se queja el apelante de que se le privó del derecho de impugnar al policía al negársele oportunidad de presentar en evidencia la aludida denuncia. El error, de haberse cometido, carece de importancia en este caso, y no conllevaría la revocación de la sentencia apelada. El propio apelante admitió en su testimonio la intervención del policía con él en la madrugada de los hechos en el pueblo de Cataño. Aun en el supuesto de que en la denuncia formulada contra el acompañante del acusado se hiciera figurar la Avenida Nereida como sitio de la ocurrencia de los hechos, esa discrepancia no era de tal naturaleza que moviera al juez a negarle crédito al policía, especialmente en vista del relato poco creíble que hace el acusado en su testimonio para justificar su presencia en el sitio de los hechos.

La contención suscitada por el tercer señalamiento de error es al efecto de que hubo una desviación del procedimiento establecido en la sección 5–804 de la Ley de Vehículos y Tránsito porque el fiscal no sometió el sumario a un magistrado para que éste hiciera una determinación de causa probable de la comisión del delito y que conforme a la enmienda hecha a dicha sección por la Ley Núm. 94 de 21 de junio de 1961, el fiscal carece de autoridad para radicar acusaciones sin el requisito previo de la determinación de causa probable por un magistrado. ■

No nos detendremos a discutir este planteamiento. Los hechos del caso no son los adecuados para ello. El acusado fue arrestado por un policía mientras conducía un automóvil en estado de embriaguez. Le hizo el requerimiento y las advertencias de ley para que se sometiera al análisis químico y se negó. Fue luego conducido ante un magistrado y éste determinó que existía causa probable de la comisión del delito

de conducir un vehículo de motor en estado de embriaguez y en su consecuencia ordenó su arresto y le señaló fianza para su libertad provisional. Presumimos que el magistrado cumplió con su deber y que su determinación de causa probable se basó tanto en la declaración del policía como en su observación del detenido. Existiendo pues una previa determinación de causa probable por un magistrado, procedía la radicación de la acusación por el fiscal, independientemente de si este funcionario tiene o no facultad para radicar acusación cuando no ha mediado una previa determinación de causa probable por un magistrado.

*El error tampoco fue cometido y en su consecuencia se confirmará la sentencia apelada.*